**F I L E D**
United States Court of Appeals
Tenth Circuit

**MAY 2 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DAVID EARL HUGOBOOM,
TINA MARIE INSANA,

      Defendants-Appellants.

No. 96-8050
No. 96-8062

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 96-CR-0003-B)**

---

Donald E. Miller, Cheyenne, Wyoming, appearing for appellant Hugoboom.

Andrea L. Richard, Rothgerber, Appel, Powers & Johnson, LLP, Cheyenne, Wyoming, appearing for appellant Insana.

David A. Kubichek, Assistant United States Attorney (David D. Freudenthal, United States Attorney, with him on the brief), Casper, Wyoming, appearing for the appellee.

---

Before **ANDERSON**, Circuit Judge, **BRISCOE**, Circuit Judge, and **MCWILLIAMS,** Senior Circuit Judge.

---

**MCWILLIAMS,** Senior Circuit Judge.

      Pursuant to Fed. R. Crim. P. 11(a)(2), David Earl Hugoboom and Tina Marie

Insana entered conditional pleas of guilty to Counts 1 and 4 of a four-count indictment. Count 1 charged them with unlawfully manufacturing methamphetamine within 1,000 feet of an elementary school in Casper, Wyoming, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 860(a) and 18 U.S.C. § 2. Count 4 charged them with criminal forfeiture in violation of 21 U.S.C. § § 853(a)(1) and (a)(2). In thus pleading, Hugoboom and Insana, with the approval of the court and the consent of the government, reserved the right to appellate review of the district court's order denying their pretrial motions to suppress. Hugoboom and Insana appeal that order.[1] We conclude that the district court did not err in denying the motions to suppress, and therefore affirm. Some background facts are necessary to an understanding of the issue here presented.

On January 17, 1996, United States Postal Inspector Alarick Holt was working at the Denver International Airport when he spotted what to him was a suspicious express mail parcel addressed to one Rick DeVoe, 1745 Pine Street, Casper, Wyoming 82604.[2] Inspector Holt had that parcel, along with several others, subjected to a "sniff" by a narcotics detection dog named Chris. When Chris sniffed the parcel addressed to

---

[1]Counsel for Insana has filed a brief in this court and participated in oral argument of the case. Counsel for Hugoboom sought, and obtained permission from us, to adopt the brief filed by Insana, but did not participate in oral argument.

[2]Among the factors which led Inspector Holt to pull this parcel out of the regular mail stream was that it was wrapped in ordinary brown paper, was heavily wrapped in gray duct tape, bore a fictitious return address (with no name) which had a zip code different from the zip code of the mailing address, and was mailed from Redlands, California.

- 2 -

DeVoe, it began barking, biting and scratching at the parcel. As a result of Chris' reaction, Inspector Holt sought and obtained a search warrant to open and inspect the contents of the parcel from the Hon. David L. West, a United States Magistrate Judge sitting in Denver, Colorado.

After receiving the search warrant, Inspector Holt opened the parcel in question and found, *inter alia,* a silver colored bundle wrapped in duct tape shoved inside a stuffed gorilla. When opened, the packet revealed the presence of approximately 215 grams of a white powdery material. A "presumptive field test," a Scott Reagent test, indicated the presence of cocaine. The substance was retested on January 18, 1996, again using the Scott Reagent test, and that test also indicated the presence of cocaine.[3] However, in this appeal, neither Hugoboom nor Insana has challenged the validity of the warrant issued by the United States Magistrate Judge sitting in Denver, Colorado, authorizing Inspector Holt to open the parcel and inspect its contents.

On January 18, 1996, Inspector Holt contacted the Drug Enforcement Administration (DEA) office in Casper, Wyoming, and made arrangements to carry out a "controlled delivery" of the parcel to DeVoe at the Casper address. In connection therewith, Inspector Holt applied for and received an "anticipatory search warrant" from the Hon. John C. Brooks, a United States Magistrate Judge sitting in Casper, Wyoming.

---

[3]Subsequent tests, however, proved that the substance was not cocaine, but actually was ephedrine, a precursor to methamphetamine.

In his affidavit, Inspector Holt recited the statements previously made by him in his affidavit to the Magistrate Judge sitting in Denver. In addition, Inspector Holt set forth the results of the presumptive field test and indicated that he and DEA agents proposed to make a controlled delivery of the parcel to the named addressee. Inspector Holt also stated that "[i]n the light of the above circumstances, there may be practical difficulties in obtaining access to the Magistrate Judge in a timely fashion." Accordingly, he requested a search warrant to be issued with its execution contingent upon the delivery of the parcel to a responsible adult at the residence located at 1745 Pine Street, Casper, Wyoming, who willingly "accept[s] delivery" and signs a receipt therefor. On the basis of Inspector Holt's affidavit, Magistrate Judge Brooks issued a search warrant which both Hugoboom and Insana do challenge in this appeal.

But, there is still another search warrant in the case! After receiving the anticipatory search warrant on January 18, 1996, Inspector Holt, dressed as a postal carrier and arriving in an official postal vehicle, delivered the parcel to the residence at 1745 Pine Street. Inspector Holt knocked at the door, and persons later identified as Rick DeVoe and David Hugoboom responded thereto. When Inspector Holt indicated that he had a parcel for a Rick DeVoe, the latter identified himself as DeVoe and signed a receipt for the parcel, which was handed to him. Inspector Holt then left the residence and went to a staging area where other officers were waiting. About fifteen minutes later, Inspector

Holt, along with DEA agents and officers from the Casper Police Department, returned to the residence and executed the anticipatory search warrant.

Upon arriving back at the Pine Street address, Inspector Holt and the others began the search by first knocking at the door and announcing their presence, and thereafter entering the residence and conducting a protective sweep of the premises. During the course of the protective sweep, Hugoboom attempted, unsuccessfully, to leave the house via the back door. Tina Insana was found in the lower level of the residence.

During the ensuing protective sweep of the residence, Inspector Holt and others looked into a small storeroom through an open door where they saw glass jars containing various liquids, a large plastic container, numerous coffee filters, a Pyrex dish, a beaker, plastic tubing and the like. Based on their observations, Inspector Holt and a DEA agent consulted with the United States Attorney's office to determine whether the laboratory apparatus could be properly seized under the authority of the anticipatory search warrant. After concluding that the anticipatory search warrant was not sufficiently broad to warrant seizure of the laboratory items, Inspector Holt sought and received a third search warrant from Magistrate Judge Brooks authorizing seizure of the laboratory paraphernalia. In his affidavit, Inspector Holt recited much of which he had said in his two prior affidavits, adding, however, a description of what he and the other officers had seen while executing the second search warrant.

This third warrant, also issued on January 18, 1996, at about 4:52 p.m., resulted in the seizure, on the same day, of the methamphetamine laboratory. Subsequent to the execution of this third warrant, each of the three defendants, after being advised of their rights, confessed to DEA agents, in varying degrees, to manufacturing methamphetamine at the residence at 1745 Pine Street. However, neither Hugoboom nor Insana has challenged the third warrant in the present appeal.

At the hearing on the motions to suppress, the government called as witnesses Alarick Holt, the postal inspector; Kenneth Gurule, a Denver Police officer who was the handler of the dog which "sniffed" the package at Denver International Airport; George Angelos, a forensic scientist who testified that "presumptive examinations" were designed "to get a general idea as to what you might be dealing with" and were not "definitive"; and Steven Perkins, a DEA agent in Casper, Wyoming, who participated in the execution of the anticipatory search warrant and later interrogated DeVoe, Hugoboom and Insana.[4] Defendant Insana also testified at the suppression hearing, and stated that she packed the parcel addressed to DeVoe at the Casper address with ephedrine and that her sister mailed it.

In denying the two motions to suppress, the district court found, *inter alia,* that the warrant issued in Denver to search the package was based on probable cause and was

_____

[4]Insana stated, *inter alia,* to Agent Perkins that DeVoe had been distributing methamphetamine in the Casper area "that he received from sources in California since approximately August 1995 . . . ."

"neither overbroad nor too general."  The district court then went on to hold that the anticipatory search warrant issued in Casper, Wyoming, to search the premises located at 1745 Pine Street also was based on probable cause. In connection therewith, the court also stated that "[a] heightened standard, in my judgment, is not required for such a warrant."  Further, the district court concluded that the anticipatory search warrant was "neither overbroad nor too general."  Finally, the district court held that the third warrant was based on probable cause and was "properly issued and executed."

As indicated, in the present appeal, Hugoboom and Insana challenge only the second warrant, i.e., the anticipatory search warrant issued by Magistrate Judge Brooks in Casper, Wyoming, on January 18, 1996.  They argue that the anticipatory warrant violates the Fourth Amendment to the United States Constitution which prohibits "unreasonable searches and seizures" and requires that search warrants be issued only upon "probable cause."[5]

In denying the defendants' motions to suppress, the district court held, *inter alia,* that on the record before it there was probable cause to issue the anticipatory search warrant and that it was not otherwise unconstitutional.  And that basically is the only issue to be resolved on appeal.  We agree with the district court.

---

[5]Counsel for Insana also contends that the search and seizure under the anticipatory search warrant violates Article l, Section 4, of the Wyoming Constitution.  This being a federal indictment and, conditional plea of guilty thereto, we are not concerned, as such, with the Wyoming Constitution.

In reviewing a district court's denial of a motion to suppress, we should view the evidence adduced at the hearing on the motion in a light most favorable to the government and we should review a district court's findings of fact only for clear error. *United States v. Glover,* 104 F.3d 1570, 1576 (10th Cir. 1997); *United States v. Alarcon-Gonzalez,* 73 F.3d 289, 291 (10th Cir. 1996). However, questions concerning the reasonableness of a search under the Fourth Amendment, and the existence, or non-existence, of probable cause, are subject to *de novo* review by us. *United States v. Alvarez,* 68 F.3d 1242, 1244 (10th Cir. 1995); *United States v. Carhee,* 27 F.3d 1493, 1496-97 (10th Cir. 1994).

Many, if not most, search warrants are effective upon issuance and may be executed immediately thereafter. However, an anticipatory search warrant, i.e., a warrant which only becomes effective upon the happening of a future event, is not unconstitutional *per se* and is, indeed, no stranger to the law. Such warrants have repeatedly been upheld, assuming probable cause and so long as the conditions precedent to execution are clearly set forth in the warrant or in the affidavit in support of the anticipatory warrant. *See United States v. Gendron,* 18 F.3d 955, 965 (1st Cir. 1994); *United States v. Lawson,* 999 F.2d 985, 987-88 (6th Cir. 1993); *United States v. Tagbering*, 985 F.2d 946, 950 (8th Cir. 1993); *United* States *v. Rey,* 923 F.2d 1217, 1220-1221 (6th Cir. 1991); *United States v. Wylie,* 919 F.2d 969, 974 (5th Cir. 1990); *United*

*States v. Garcia,* 882 F.2d 699, 703 (2d Cir.), *cert. den.* 493 U.S. 943 (1989); *United*

*States v. Goodwin,* 854 F.2d 33, 36 (4th Cir. 1988).

The rationale for upholding an anticipatory search warrant when challenged on

Fourth Amendment grounds is well set forth in *United States v. Gendron*, 18 F.3d 955,

965 (1st Cir. 1994), where Chief Judge Breyer, now Justice Breyer, spoke for the panel as

follows:

> [11,12] In general, the simple fact that a warrant is "anticipatory"--i.e., that it takes effect, not upon issuance, but at a specified future time--does not invalidate a warrant or make it somehow suspect or legally disfavored. Warrants often do specify that they will take effect upon issuance. But the Constitution imposes no such requirement. Rather, it says that a search must not be "unreasonable," and that warrants must be supported by "probable cause." U.S. Const. amend. IV. There is nothing unreasonable about authorizing a search for tomorrow, not today, when reliable information indicates that, say, the marijuana will reach the house, not now, but then. Nor does it seem automatically unreasonable to tie the warrant's search authority to the future event that brings with it the probable cause (e.g., the time of "delivery of a large brown package addressed to X with return address Y"). *Ricciardelli,* 998 F.2d at 10-11. In principle, the use of a "triggering event" can help assure that the search takes place *only* when justified by "probable cause"; and anticipatory warrants may thereby offer greater, not lesser, protection against unreasonable invasion of a citizen's privacy. As one commentator has put it,
>
>> as a general proposition the facts put forward to justify issuance of an anticipatory warrant are more likely to establish that probable cause will exist at the time of the search than the typical warrant based solely upon the known prior location of the items to be searched at the place to be searched.
>
> 2 Wayne H. LaFave, Search and Seizure § 3.7(c), at 97 (2d ed. 1987). Were "anticipatory warrants" unlawful, law enforcement agents would have to wait until the triggering event occurred; then, if time did not permit a warrant application, they would have to forego a legitimate search, or, more likely,

simply conduct the search (justified by "exigent circumstances") without any warrant at all. *See Vale v. Louisiana,* 399 U.S. 30, 34-35, 90 S. Ct. 1969, 1971-1972, 26 L.Ed.2d 409 (1970); 2 LaFave, *supra*, § 6.5. We are not surprised that courts have found "anticipatory warrants," considered as a class, perfectly consistent with the Constitution.

In denying the defendants' motions to suppress, the district court rejected defense counsel's suggestion that an affidavit for an anticipatory search warrant should, because it is "anticipatory" in nature, be subjected to "special scrutiny," i.e., closer scrutiny than an affidavit seeking the issuance of a warrant which would be effective immediately. In rejecting that suggestion, the district court in the instant case opined that ". . . all an agent is reasonably required to do is have probable cause. He's not required to have four times probable cause or five times or ten times. He's just required to have probable cause. I think they had it." The district court then added that "[a] heightened standard, in my judgment, is not required for such a warrant."

On appeal, counsel argues that the district court erred in not applying a higher degree of scrutiny to an application for an anticipatory search warrant than it would to an application for a search warrant to be effective on issuance. We agree with the district court on this matter. In support of our determination, *see United States v. Gendron,* 18 F.3d at 965, where the First Circuit stated that anticipatory search warrants are not "somehow suspect or legally disfavored" and that the Constitution only requires that "a search must not be 'unreasonable,' and that warrants must be supported by 'probable cause.'"

Counsel also argues that there was not probable cause to support the anticipatory search warrant because the affidavit for the warrant only related to the proposed controlled delivery and that there was no "independent evidence" of drug activities being carried on at 1745 Pine Street. We disagree. In *United States v. Lawson*, 999 F.2d 985, 987 (6th Cir. 1993), the Sixth Circuit rejected the suggestion made in that case that the anticipatory warrant was issued without probable cause because it did not "contain results of surveillance of the address, nor did it contain information from other law enforcement agencies concerning Mr. Lawson's known or suspected drug activities." It was defendant's further contention in that case that "the sole link between Mr. Lawson and the alleged drug trafficking activities was his name as an addressee on the package, confirmed by his receipt of the package." *Lawson,* 999 F.2d at 987. As indicated, the Sixth Circuit, citing *United States v. Rey,* 923 F.2d 1217 (6th Cir. 1991), rejected such suggestion and noted that in *Rey* "[t]he affidavit only referred to the controlled delivery, and gave no information regarding illicit activity concerning the defendant or the residence." *Id.* We agree.[6]

---

[6]We reject any suggestion that the anticipatory search warrant was not based on probably cause because the substance in the parcel believed to be cocaine later turned out to be ephedrine. In this general connection, in *Illinois v. Rodriguez,* 497 U.S. 177, 185 (1989), the Supreme Court said that "[i]t is apparent that in order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government--whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement--is not that they always be correct, but that they always be reasonable."

Further, and in this same general connection, the Seventh Circuit in *United States v. Leidner,* 99 F.3d 1423, 1427 (7th Cir. 1996), noted that "[s]everal circuits agree that in order for an anticipatory warrant to satisfy the probable cause standard it must demonstrate that contraband is on a 'sure course' to the designation to be searched." Certainly, the alleged contraband in the instant case was on a "sure course" to 1745 Pine Street.

In the affidavit attached to his application for an anticipatory search warrant, Inspector Holt stated, *inter alia,* that on January 18, 1996, or "in the event delivery is unsuccessful [on January 18, 1996] on succeeding dates thereafter, within the time period authorized," he would attempt to deliver the parcel here in question to an adult at the Pine Street address and that upon delivery to a willing adult and upon obtaining a signed receipt for such delivery, the search warrant would then be executed. The anticipatory search warrant which Magistrate Judge Brooks issued did not, itself, state that the warrant should only be executed after delivery of the parcel at the Pine Street address to an adult who signed a receipt therefor. Counsel argues that such omission is constitutional error. We disagree. In accord, *see United States v. Moetamedi,* 46 F.3d 225, 229 (2d Cir. 1995), where the Second Circuit spoke as follows:

> These requirements were satisfied in this case. The Affidavit stated clear and precise conditions for the execution of the Warrant, *see supra* note 1, and these conditions were satisfied by the circumstances of the delivery of the Package, as determined by Chief Judge McAvoy in factual findings that are not clearly erroneous. *See Moetamedi,* 1993 WL 147461, at *5. Certainly, the most efficient way to ensure that an anticipatory warrant is properly executed is to include the conditions for its execution

in the warrant. We will not posit a Fourth Amendment violation requiring suppression, however, when constitutionally satisfactory conditions for execution of the warrant are stated in the affidavit that solicits the warrant, accepted by the issuing magistrate, and actually satisfied in the execution of the warrant.

The anticipatory search warrant issued by Magistrate Judge Brooks contained a printed statement which read as follows: "YOU ARE HEREBY COMMANDED to search on or before _____ (not to exceed 10 days)." For some reason, the "on or before" date was not set forth in the warrant signed by the Magistrate Judge. This omission is said, by counsel, to constitute constitutional error. We do not agree. In this connection, we note that the anticipatory warrant in the instant case was, in fact, executed within minutes after the delivery of the alleged contraband to DeVoe. A similar argument was rejected by the Eleventh Circuit in *United States v. Gerber,* 994 F.2d 1556, 1559-60 (11th Cir. 1993). In that case, the court stated that the Fourth Amendment does not specify that a search warrant contain an expiration date, and, citing with approval *United States v. Stefanson,* 648 F.2d 1231, 1235 (9th Cir. 1982), spoke as follows:

> This court has adopted the Ninth Circuit standard for analyzing alleged violations of Rule 41 relating to search warrants:
>
> > "[U]nless *a clear constitutional violation occurs*, noncompliance with Rule 41 requires suppression of evidence only where (1) there was 'prejudice' in the sense that *the search might not have occurred or would not have been so abrasive if the rule had been followed,* or (2) there is *evidence of intentional and deliberate disregard of a provision in the Rule.*

- 13 -

*United States v. Loyd,* 721 F.2d 331, 333 (11th Cir. 1983) (per curiam) (quoting *United States v. Stefanson,* 648 F.2d 1231, 1235 (9th Cir. 1981) (citations omitted) (emphasis added).

We further reject counsel's contention that the search and seizure authorized by the anticipatory search warrant was "overbroad" in that it authorized seizure of items other than cocaine, which, as indicated, was mistakenly believed to be the substance delivered. This argument was rejected by the Sixth Circuit in *United States v. Rey,* 923 F.2d 1217, 1220 (6th Cir. 1991), where the court observed that "other circuits have rejected the claim that a warrant authorizing a search for drug paraphernalia as well as contraband is overbroad, even though based only on a knowledge of a controlled delivery." And, in any event, in *United States v. Brown,* 984 F.2d 1074, 1077 (10th Cir. 1993), we noted that "[a]t least eight circuits have held that where a warrant contains both specific as well as unconstitutionally broad language, the broad portion may be redacted and the balance of the warrant considered valid."

Judgment affirmed.