**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 3 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

vs.

JOSE JUAN LORA-SOLANO, also
known as Lora Salono,

       Defendant - Appellant.

No. 02-4139

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

vs.

NICOLAS CORTEZ-CRUZ, also
known as Nicko Cortez,

       Defendant - Appellant.

No. 02-4173

**APPEALS FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:00-CR-596-03-TC)**
**(D.C. No. 2:00-CR-596-01-TC)**

Submitted on the briefs:[*]

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of the appeal in No. 02-4173. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G). The

Laurie J. Sartorio, Assistant United States Attorney (and Paul M. Warner, United States Attorney, on the brief), United States' Attorney's Office, Salt Lake City, Utah, for Plaintiff - Appellee.

Robert Breeze, Salt Lake City, Utah, for Defendant - Appellant Jose Juan Lora-Solano.

Joseph Jardine, Salt Lake City, Utah, for Defendant - Appellant Nicolas Cortez-Cruz.

———————————

Before **TACHA**, Chief Judge, **HOLLOWAY**, and **KELLY**, Circuit Judges.

———————————

**KELLY**, Circuit Judge.

———————————

In these cases consolidated for purposes of decision, Defendants-Appellants Jose Juan Lora-Solano and Nicholas Cortez-Cruz appeal their convictions for possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) following entry of conditional pleas preserving their rights to appeal the district court's denial of their motions to suppress. Mr. Lora-Solano raises two issues in his appeal: (1) the judge pro tempore who signed the search warrant was not authorized, and (2) the search warrant was not supported by probable cause and lacked sufficient particularity in describing the premises to be searched. Mr. Cortez-Cruz raises six issues in his appeal, which can be grouped under four topics: (1) the lack of authority of the judge pro tempore to issue a search warrant

———————————

case therefore is ordered submitted without oral argument.

in this case, (2) the lack of probable cause and description of the place to be searched with sufficient particularity in the warrant, (3) the district court's denial of his motion for a continuance, and (4) the district court's increase of his offense level by three levels under U.S.S.G. § 3B1.1(b).

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

Background

Relying upon information provided by informant Marcos Lenin Juarez, officers and agents from the Utah Criminal Bureau of Investigation and the DEA Metro Narcotics Task Force planned to intercept a delivery of drugs on November 20, 2000. Mr. Juarez agreed to perform a controlled delivery of drugs to a residence at 2021 Camelot Way in Salt Lake City, Utah, and he told police that he had been paid $2000 by an individual in Phoenix, Arizona, to deliver the drugs to someone named "Nico" (later identified as Mr. Cortez-Cruz). Mr. Juarez was not certain of the exact street address but had visited the house previously. Agents dispatched to 2021 Camelot Way were unable to identify a residence at that address, and so Mr. Juarez went with an officer to the area and realized that the correct address was, in fact, 2051 (not 2021) Camelot Way. Apparently, the new address was not communicated to the officer charged with obtaining the warrant, and the address on the warrant was listed incorrectly as 2021 Camelot Way.

That evening, Mr. Juarez went to the residence at 2051 Camelot Way. Several individuals came out of the house and took items from Mr. Juarez's car. Once the individuals were back inside the house, officers approached the house. Mr. Lora-Solano fled out the back door and was pursued by police. A search of the premises found 50 pounds of marijuana and one kilogram of cocaine. Mr. Lora-Solano told police that he was renting a room at the house, which was owned by Mr. Cortez-Cruz. Mr. Juarez told the police that Mr. Cortez-Cruz had inspected the drugs before the police entered the residence.

## Discussion

A.    Authority of the Judge Pro Tempore

Under the Fourth Amendment, a neutral and detached magistrate must issue a search warrant for the warrant to be valid. United States v. Leon, 468 U.S. 897, 914 (1984). We review de novo the legal issue of whether a search or seizure comported with the Fourth Amendment. United States v. Lyons, 7 F.3d 973, 975 (10th Cir. 1993).

The search warrant was obtained by Officer Troy Denney from Walter Ellett, a state judge pro tempore. Judge Ellet was appointed on June 27, 2000, for a six-month term or until a vacancy was filled. On December 8, 2000, Judge Ellet's appointment was renewed for a period beginning December 27, 2000, for

six months or until a vacancy was filled. Judge Randall Skanchy was selected to fill the vacancy on November 15, 2000, but not sworn into office until January 3, 2001. At issue here, then, is whether Judge Skanchy's selection on November 15, 2000, means that Judge Ellet was not an active judge when he signed the search warrant on November 20, 2000. Relying on language in the Utah Constitution suggesting that a vacancy is "filled" when a person is appointed by the Governor (and not when a person is sworn into office), Appellants contend that Judge Ellet was not an active judge when he signed the warrant.

After reviewing the relevant provisions of the Utah Constitution, Article VIII, Section 8 of the Utah Constitution merely provides the mechanism whereby the state fills vacancies in the judiciary. That provision does not, contrary to Appellants' assertion, determine when a judge begins service and thereby ends the term of a pro tempore judge. A more relevant provision of the Utah Constitution governs the powers of judges pro tempore: "Except as otherwise provided by this constitution, the Supreme Court by rule may authorize retired justices and judges and judges pro tempore to perform any judicial duties." Utah Const. art. VIII, § 4. By appointing Judge Ellet a judge pro tempore in June of 2000 and renewing his appointment in December–well after he signed the warrant in this case–the state was obviously exercising its authority to authorize Judge Ellet to perform judicial duties throughout the period during which the warrant was signed.

Furthermore, the testimony at the suppression hearing regarding the practice of the Utah state judiciary leaves no doubt that Judge Ellet was an active judge at the time of signing the warrant. Judge Ellet was, according to the Utah state judiciary, employed as a judge at the time he signed the warrant. As the district court noted, the December 8, 2000, renewal order stated that Judge Ellet's appointment as a pro tempore judge was being "renewed," with an active date of December 27, the date on which the first appointment would expire. Until Judge Skanchy took the oath on January 3, 2001, then, Judge Ellet was properly acting as a Utah state judge and was empowered to issue a warrant on November 20, 2000.

B.    Search Warrant

We review a district court's factual findings underlying its decision to deny a motion to suppress for clear error. United States v. Downs, 151 F.3d 1301, 1302 (10th Cir. 1998). We review de novo the ultimate determination on the reasonableness of a search or seizure under the Fourth Amendment. United States v. Anderson, 114 F.3d 1059, 1063 (10th Cir. 1997).

Mr. Lora-Solano and Mr. Cortez-Cruz essentially raise three objections to the anticipatory search warrant issued in this case. First, they argue that listing the wrong house number (2021 instead of 2051) displays a lack of sufficient particularity. Second and similarly, they argue that a failure to provide a physical

description of the premises to be searched under the warrant also constitutes a lack of sufficient particularity. Finally, they argue that the affidavit supporting the warrant incorrectly alleged that a conversation between the police informant and Mr. Cortez-Cruz took place and was recorded.

An anticipatory search warrant, such as the warrant in this case, is valid "when the warrant application indicates there will be a government-controlled delivery of contraband to the place to be searched, probable cause for a search is established and . . . provided the warrant's execution is conditioned on the contraband's delivery to, or receipt at, the designated place." United States v. Rowland, 145 F.3d 1194, 1202 (10th Cir. 1998). Under our holding in United States v. Hugoboom, 112 F.3d 1081 (10th Cir. 1997), the probable cause requirement is satisfied by reference to a controlled delivery of contraband in the supporting affidavit. See Rowland, 145 F.3d at 1202-03 ("[W]hen the warrant affidavit refers to a controlled delivery of contraband to the place designated for search, the nexus requirement of probable cause is satisfied and the affidavit need not provide additional independent evidence linking the place to be searched to criminal activity.") (citing Hugoboom, 112 F.3d at 1086). By adequately stating the conditions precedent to the warrant's execution (particularly the cooperation of an informant) in the affidavit, the warrant is valid despite the lack of a physical description of the premises.

The district court found that the police had reliably believed Mr. Juarez's claim that he spoke with Mr. Cortez-Cruz, and we do not find that determination clearly erroneous. So also a miscommunication about whether a call between the informant and Mr. Cortez-Cruz was recorded does not render the warrant invalid. The important issue is that the informant did, in fact, have a telephone conversation with Mr. Cortez-Cruz and relayed the contents of the conversation to the police (most importantly, the address of the house where the delivery of drugs would take place). Thus, the statements in the affidavit regarding the telephone call do not rise to the level of deliberately false statements so as to render the warrant invalid.

The error in the warrant regarding the house number to be searched is a closer issue in light of this court's ruling in United States v. Williamson, 1 F.3d 1134 (10th Cir. 1993). "The test for determining the adequacy of the description of the location to be searched is whether the description is sufficient 'to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.'" United States v. Pervaz, 118 F.3d 1, 9 (1st Cir. 1997) (citations omitted). Clearly, the second concern (reasonable probability that another premise might be mistakenly searched) is not implicated here–unless one could imagine that residents in two houses on the same street, including one at an

address that does not exist, were expecting deliveries of illegal drugs on November 20, 2000. The district judge's findings of fact expressly state that CIB agents dispatched to 2021 Camelot Way "were not able to identify a residence" at that location and that another agent then drove with the informant to the neighborhood and ascertained the correct address. I. Rec. Doc. 106 at 3. The fact that 2021 Camelot Way apparently does not exist and the officers' knowledge of that fact "make[s] the mistaken search of the wrong premises unlikely," a factor we may appropriately consider in upholding the warrant. United States v. Gitcho, 601 F.2d 369, 372 (8th Cir. 1979). Furthermore, in this case "additional circumstances indicate that there would not have been a mistaken search of other premises," United States v. Pelayo-Landero, 285 F.3d 491, 497 (6th Cir. 2002), namely the presence of an informant who was to make a controlled delivery of drugs before the warrant was executed. Because "no reasonable probability existed that the officers would search the wrong premises as a result of the inaccuracies in the warrant," United States v. Durk, 149 F.3d 464, 466 (6th Cir. 1998), the warrant satisfies that portion of the constitutional requirements for particular description.

As to the first concern (locate and identify the premises with reasonable effort), a clerical error as to the number of the house to be searched does not entail an error as to which house would, in fact be searched. "[P]ractical

accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the premises to be searched." United States v. Dorrough, 927 F.2d 498, 500 (10th Cir. 1991); see also United States v. Ventresca, 380 U.S. 102, 108 (1965); United States v. DePugh, 452 F.2d 915, 920 (10th Cir. 1971). A technically wrong address does not invalidate a warrant if it otherwise describes the premises with sufficient particularity so that the police can ascertain and identify the place to be searched. See Steele v. United States, 267 U.S. 498, 503 (1925); United States v. Sturmoski, 971 F.2d 452, 458 (10th Cir. 1992).

"The requisite specificity of the description . . . depends heavily on the facts of each case." Dorrough, 927 F.2d at 500. In Williamson, a warrant that misstated the premises to be searched so as not to be even "practically accurate" was held invalid. 1 F.3d at 1136. The dissent relies on Williamson without noting the significant differences between the facts in that case and in the cases before us. The warrant in Williamson designated a rural mail box nine miles away from the premises that were searched, and the government argued unsuccessfully that the executing officer's knowledge of the actual location of the business alone cured the defective warrant. That is hardly the rule we are adopting here, nor are we "dispens[ing] with any requirement that an anticipatory search warrant contain a description of the premises to be searched." Dissent at 5

(emphasis in original). The warrant here was an anticipatory warrant in which the police relied on an informant to direct them to the proper house, so this is not a case in which an executing officer is the sole source of information about the location of the premises to be searched. This court has not gone so far as to say that an officer's knowledge may not cure a technically inaccurate warrant–Williamson acknowledged just the opposite, provided that the officer's knowledge is not the sole source of the location. 1 F.3d at 1136; see also Sturmoski, 971 F.2d at 458. Here we have the correct street, an address off by one digit, and an informant identifying the mistake; it is perfectly appropriate in such circumstances to cure the problem with the officer's knowledge.

We disagree with the dissent's claim that the "search warrant relied on here indicated only an address of '2021 Camelot Way' with no other supporting description." Dissent at 1; see also id. at 1 ("The search warrant here contained no description whatever of the place to be searched other than the wrong street number . . . ."); id. at 4 n.1 ("[N]o language can be found in the warrant conditioning its execution on the delivery of the contraband."). The warrant states that the "Affiant anticipates that a controlled delivery of a large quantity of marijuana and cocaine . . . will be made by Agents of the Criminal Investigations Bureau," and that "[y]our Affiant prays to include in this affidavit for a search warrant for any rooms, attics, basements, crawl spaces and other parts therein as

- 11 -

they pertain <u>to the home where the drugs are expected to be delivered</u>."  I. Rec. Doc. 63, Exhibit B at 1-2 (emphases added).  The references in the warrant to the controlled delivery of drugs may not strictly be conditions precedent to execution of the warrant, but we can still look at the warrant as a whole and see that the warrant (and the supporting affidavit) make extensive reference to the expected drug sale.  The warrant and the affidavit gave a precise description of the place to be searched–the house to be searched was the house where a controlled delivery of drugs would take place.  The danger that the particular description requirement seeks to avoid is the threat of general and exploratory searches, <u>Andresen v. Maryland</u>, 427 U.S. 463, 480 (1976), and it is difficult indeed to see how that worry is implicated in these cases.

Finally, even if we were to find that misstating the address on the warrant by a single digit but relying on an informant to identify the premises before execution of the warrant did, in fact, render the warrant invalid, the good faith exception of <u>Leon</u>, 468 U.S. at 920-24, would apply.  "[W]hen police officers act in good faith and reasonable reliance on a search warrant, the evidence obtained during the search should not be suppressed even if the warrant was lacking in probable cause."  <u>United States v. Price</u>, 265 F.3d 1097, 1102 (10th Cir. 2001) (citing <u>Leon</u>, 468 U.S. at 913).  The incorrect address provided to the magistrate and reflected in the warrant was clearly not an instance of "a police officer

- 12 -

ma[king] false statements in an affidavit supporting a search warrant knowingly or with reckless disregard for the truth." United States v. Tuter, 240 F.3d 1292, 1299 (10th Cir. 2001) (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)). Thus, the warrant here was "not so lacking in indicia of probable cause that the executing officer should have known the search was illegal despite the state magistrate's authorization." United States v. Danhauer, 229 F.3d 1002, 1007 (10th Cir. 2000).

C.      Denial of Motion for Continuance

As to Mr. Cortez-Cruz's appeal of the district court's denial of a request for a continuance, a defendant may enter a conditional plea in order to preserve "the right to have an appellate court review an adverse determination of a specified pretrial motion." Fed. R. Crim. P. 11(a)(2) (emphasis added). The district court's decision not to grant a continuance was never mentioned as an issue on which the plea was conditioned, and Cortez-Cruz thereby waived his right to appeal that issue and all other nonjurisdictional defenses by entering a plea. See United States v. Salazar, 323 F.3d 852, 856 (10th Cir. 2003).

D.      Sentencing Increase

Finally, under the Sentencing Guidelines, a district court may impose a three level increase in a defendant's offense level where the criminal activity involved five or more participants and the defendant played a managerial or

supervisory role.  U.S.S.G. § 3B1.1(b).  We review the district court's determination that a defendant was a manager or supervisor of criminal activity for clear error.  United States v. Vanmeter, 278 F.3d 1156, 1166 (10th Cir. 2002).

We conclude from a review of the record that the district court properly found that Mr. Cortez-Cruz met the requirements for a three level increase.  The government showed by a preponderance of the evidence that there were at least five participants in the drug dealing.  Based on the fact that it was Mr. Cortez-Cruz's home that was the center of this activity and that Mr. Cortez-Cruz planned much of the activity, the district court did not commit clear error in finding that he was a supervisor or manager of the operation.

Accordingly, the district court's judgment of conviction and sentence in these cases is AFFIRMED.

No. 02-4139, <u>United States v. Lora-Solano</u>
No. 02-4173, <u>United States v. Cortez-Cruz</u>

**HOLLOWAY**, Senior Circuit Judge, dissenting in part:


The Fourth Amendment mandates, *inter alia*, that no search warrant shall issue, "but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Here the Majority Opinion concludes that the warrant issued was valid under the Fourth Amendment even though it had an admittedly erroneous address of the home to be searched, and the warrant gave no other particulars describing the property. Because I cannot agree with this disregard of the commands of the Constitution, I must respectfully dissent from Part B of the Majority Opinion addressing the search warrant and from the reliance on the *United States v. Leon,* 468 U.S. 897 (1984), exception.

## I

The search warrant relied on here indicated only an address of "2021 Camelot Way" with no other supporting description. The house that was actually searched was described as "2051 Camelot Way." The search warrant here contained no description whatever of the place to be searched other than the wrong street number, "2021 Camelot Way." Reliance on such a warrant with these deficiencies cannot be justified under our precedents. We have held that:

> To pass muster under the Fourth Amendment, "[t]he warrant

> must describe the place to be searched with sufficient particularity so that the executing officer can locate and identify it with reasonable effort.  The requisite specificity of the description differs for rural and urban areas and depends heavily on the facts of each case."  *United States v. Dorrough*, 927 F.2d 498, 500 (10th Cir. 1991).  "[P]ractical accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the premises to be searched."  *Id.*

*United States v. Williamson*, 1 F.3d 1134, 1135-36 (10th Cir. 1993).

I would conclude here, as we did in *Williamson*, that "the warrant at issue did not describe the premises to be searched with sufficient particularity because it cannot be described as even 'practically accurate.'"  1 F.3d at 1136.  The Majority Opinion concedes that the issue of particularity in the designation of the place to be searched is "a closer issue" in light of *Williamson.*  The Majority Opinion attempts to escape the *Williamson* holding by saying "this is not a case in which an executing officer is the sole source of information about the location of the premises to be searched."

Here, as in *Williamson*, the critical point is that the warrant's *only* attempt to describe the property with the required particularity was defective.  The Majority Opinion blurs the line between the probable cause requirement and the mandate that the warrant describe with particularity the place to be searched.  After concluding, properly, that a controlled delivery satisfies the probable cause requirement, the Majority Opinion states that consequently, "the warrant is valid despite the lack of a physical description of the premises."  Majority Opinion at 7.

-2-

But the Fourth Amendment requires *both* probable cause and a particular description of the place to be searched.  The Majority Opinion offers no authority for its bold assumption that satisfaction of the probable cause requirement obviates the requirement of a particular description of the premises to be searched.  The Majority Opinion confesses that the error in the description here is "a closer issue" in light of *Williamson*, as noted.  I am concerned that the Majority Opinion's unsupported statement that satisfaction of the probable cause requirement renders the warrant "valid despite the lack of a physical description," Majority Opinion at 7, will cause confusion and disarray in our Fourth Amendment precedents.  The difficulty is compounded when the Majority Opinion relies again on the presence of probable cause to shore up the absence of any description of the property to be searched in its *Leon* analysis.  Majority Opinion at 12.

I would hold that *Williamson* requires us to reverse the denial of the motion to suppress here.  In that case, there was no question that the officers had probable cause and that the officers knew what premises were the target of the search.  But, as in *Williamson*, the government here "asks us to adopt a rule that an executing officer's [or informant's] knowledge *alone* is sufficient to satisfy the Fourth Amendment's particularity requirement."  1 F.3d at 1136 (emphasis in original).  In *Williamson* we rejected the government's argument because "such a

rule would be fundamentally inconsistent with the requirement of a *written warrant . . . .*" *Id.* (emphasis in original). This is exactly why we should reject the government's similar argument here. While the instant case is said to involve an anticipatory or conditional warrant,[1] the Majority Opinion fails to explain how an anticipatory or conditional warrant negates the express particularity requirement of the Fourth Amendment.

A number of precedents are reported in which search warrants have been held valid in spite of errors or ambiguities in the descriptions of the places to be searched,[2] as well as a good number of cases in which the defects have been held fatal.[3] This Majority Opinion's holding appears to be an extremely significant departure from our previous precedents because it simply cannot be denied that

---

[1]At all stages, it seems, all parties have assumed that the warrant is a conditional one. As the majority notes, we have held that such warrants may satisfy the probable cause requirement "provided the warrant's execution is conditioned on the contraband's delivery to, or receipt at, the designated place." Slip op. at 7 (quoting *United States v. Rowland*, 145 F.3d 1194, 1202 (10th Cir. 1998)). Here, of course, the place was not properly designated, as discussed throughout this dissent. Of additional concern, however, is the fact that no language can be found in the warrant conditioning its execution on the delivery of the contraband.

[2]*See, e.g., United States v. Occhipinti*, 998 F.2d 791, 799 (10th Cir. 1993); *United States v. Owens*, 848 F.2d 462 (4th Cir. 1988); *United States v. Hutchings*, 127 F.3d 1255, 1259-60 (10th Cir. 1997).

[3]*See, e.g., United States v. Williamson*, 1 F.3d 1134 (10th Cir. 1993); *United States v. Dahlman*, 13 F.3d 1391, 1394-96 (10th Cir. 1993); *United States v. Ellis*, 971 F.2d 701, 703-04 (11th Cir. 1992); *Shedd v. State*, 358 So.2d 1117 (Fla. Dist. Ct. App. 1978).

the Majority Opinion's holding dispenses with *any* requirement that an anticipatory search warrant contain a description of the premises to be searched. The Majority Opinion cites no authority directly supporting this important holding, and I find scant authority to that effect. *See State v. Morris*, 668 P.2d 857 (Alaska Ct. App. 1983). *Morris* did uphold a search under an anticipatory warrant that did not specify with particularity the place to be searched for the package of drugs. *Id.* at 862. There is, however, no persuasive analysis in *Morris* which supports a far reaching holding like that of the Majority Opinion here that an anticipatory warrant need not contain a description of the premises to be searched. As in *United States v. Rowland*, 145 F.3d 1194, 1201 (10th Cir. 1998), the issuance of an anticipatory warrant may be upheld where the magistrate determines, based on the information presented in the warrant application, "that there is probable cause to believe the items to be seized *will be at the designated place* when the search is to take place." (emphasis added) (citing *United States v. Garcia*, 882 F.2d 699, 702 (2nd Cir. 1989)).

The Majority Opinion fails to explain the reasoning for its remarkable holding dispensing with any requirement that an anticipatory search warrant contain an accurate designation of an address of the premises to be searched or any description of the premises. Aside from the already noted conflation of the separate and critical probable cause and particularity requirements, the Majority

-5-

Opinion offers very little. The Majority Opinion says that a "technically wrong address . . . does not invalidate a warrant if it otherwise describes the premises with sufficient particularity so that the police can ascertain and identify the place to be searched." Majority Opinion at 10. This statement reveals further why the warrant cannot be valid here: The warrant here fails again. It does not "otherwise describe the premises" in any manner whatsoever, much less with "sufficient particularity." I must object to the implication that this principle supports the result in this case, when it manifestly compels the opposite result.

## II

Nor can I join the Majority Opinion's alternative holding that the denial of the suppression motion can be affirmed under the good faith rationale of *United States v. Leon*, 468 U.S. 897 (1984). We are not to weigh the officers' subjective good faith. Instead, we are instructed that the "officers's reliance . . . on the technical sufficiency of the warrant . . . must be objectively reasonable . . . ." *Leon*, 468 U.S. at 922. I reject the notion that the officers could reasonably rely on a search warrant that failed to properly identify the home that the officers entered and searched. The majority concludes that the warrant was not so lacking in probable cause that the executing officer should have known that the search was illegal. But patently the warrant *was totally* lacking in probable cause to search the home at 2051 Camelot Way, which was not mentioned in the warrant or

the affidavit.  Once again, the majority conflates the probable cause requirement and the particularity requirement without any convincing explanation.

## III

For these reasons I must respectfully dissent from Part B of the Majority Opinion.