FILED
United States Court of Appeals
Tenth Circuit

August 26, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSE REYES-GONZALES,

    Defendant - Appellant.

No. 14-1030
(D.Ct. No. 1:12-CR-00272-RBJ-8)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PORFILIO** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.
_____


After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

Appellant Jose Reyes-Gonzales pled guilty to one count of conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C.

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§§ 841(a)(1), (b)(1)(A), and 846, and one count of conspiracy to engage in money laundering in violation of 18 U.S.C. § 1956(a)(2)(A), (B), and (h). He now appeals his 147-month concurrent sentences, contending the district court erred in applying a two-level enhancement based on his alleged role as an organizer or leader in a criminal activity under United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") § 3B1.1(c). He also claims the district court incorrectly deemed him ineligible for safety valve relief under U.S.S.G. § 5C1.2. We exercise jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291 and affirm Mr. Reyes-Gonzales's sentences.

## I. Factual and Procedural Background

From July 2010 to June 2012, law enforcement officials, including the Drug Enforcement Administration, Denver Police Department, and North Metro Task Force (hereinafter agents), investigated the sale and distribution of cocaine in Colorado, Wyoming, and certain Midwestern states. Following several controlled buys, agents began surveillance of Mr. Reyes-Gonzales's home and obtained a wiretap for his phone, as well as surveilled and wiretapped other conspirators' homes and/or phones. Through the course of their investigation, agents learned Mr. Reyes-Gonzales used his garage as the center of the drug conspiracy operation from which he and others distributed over fifty kilograms of cocaine to individuals in Colorado, Wyoming, and the Midwest. Mr. Reyes-Gonzales and the others in the conspiracy obtained the cocaine in Mexico, transported it from

-2-

Mexico to Colorado in hidden vehicle compartments, and unloaded it at Mr. Reyes-Gonzales's garage in Bennett, Colorado, from where it was distributed to co-defendants who sold kilogram and/or ounce quantities to their customers. The cash proceeds from these drug sales were also hidden in compartments and shipped back to Mexico in order to purchase more cocaine. During the course of the conspiracy, Mr. Reyes-Gonzales and another co-defendant, Gilbert Tobar-Ortiz, coordinated the transportation of money and cocaine between Colorado and Mexico, recruited drivers to make the trips between Colorado and Mexico, and sold and/or supplied the cocaine to other co-defendants who distributed it. The co-defendants in the conspiracy included at least two individuals who were drivers, as well as Mr. Reyes-Gonzales's girlfriend, Alma Rivera-Torres.

Following his indictment, and in exchange for removing several other criminal counts against him, Mr. Reyes-Gonzales pled guilty to one count of conspiracy to distribute five kilograms or more of cocaine and one count of conspiracy to engage in money laundering. In pleading guilty, Mr. Reyes-Gonzales stipulated to certain facts surrounding the conspiracy, including that Mr. Tobar-Ortiz and he "recruited drivers to make the trips back and forth between Colorado and Mexico." He also stipulated he used his garage to receive shipments of cocaine hidden in vehicle compartments, loaded cash in the same compartments to purchase more cocaine in Mexico, and he and Mr. Tobar-Ortiz coordinated two separate shipments of cocaine that were ultimately seized by law

enforcement. The parties also acknowledged the government's contention Mr.

Reyes-Gonzales qualified as an organizer, leader, manager, or supervisor under

§ 3B1.1 for the purpose of increasing his base offense level; Mr. Reyes-

Gonzales's disagreement with such a characterization; and his "right to challenge

[such an increase] at sentencing." Finally, Mr. Reyes-Gonzales acknowledged his

right to appeal the sentence imposed, but, in exchange for the concessions made

by the government, he:

> knowingly and voluntarily waive[d] [his] right to appeal any matter
> in connection with [the] prosecution, conviction, or sentence unless it
> [met] one of the following three criteria: (1) the sentence imposed is
> above the maximum penalty provided in the statute of conviction; (2)
> the Court, after determining the otherwise applicable sentencing
> guideline range, either departs or varies upwardly; or (3) the Court
> determines that the offense level is greater than 37 and imposes a
> sentence based upon that offense level determination.

During his plea hearing, a lengthy discussion ensued concerning this

waiver. However, Mr. Reyes-Gonzales and his attorney verified Mr. Reyes-

Gonzales understood his right to appeal and elected to waive that right, with his

counsel explaining substantial negotiations occurred, sufficient consideration

supported the waiver, and that he did not "believe that the appellate waiver in this

case would ever, ever result in a miscarriage of justice or any of the four factors

... outlined in *Hahn* as reasons to allow an appeal process to go forward."

Government counsel also requested acceptance of the appeal waiver, explaining,

in part, Mr. Reyes-Gonzales was pleading guilty in exchange for nine counts

-4-

being dismissed and certain other benefits the government would provide him for his plea. Based on this and Mr. Reyes-Gonzales's colloquy concerning his rights and relinquishment thereof, the district court accepted the plea agreement.

Prior to sentencing, the probation officer prepared a presentence report calculating Mr. Reyes-Gonzales's base offense at level 38, increasing it by two levels under U.S.S.G. § 2S1.1(b)(2)(B) and four levels under § 3B1.1(a) for being an organizer or leader, and decreasing it by three levels for acceptance of responsibility, for a total offense level of 41. This, together with a criminal history category of I, resulted in a recommended advisory Guidelines range of 324 to 405 months' incarceration. However, the probation officer also noted the government's agreement to file for a § 5K1.1 departure based on Mr. Reyes-Gonzales's substantial assistance and its recommendation for a sentence at the low end of a re-calculated Guidelines range of 147 to 183 months' imprisonment.

Both by written objection and at the sentencing hearing, Mr. Reyes-Gonzales objected to the four-level increase for his role in the offense under U.S.S.G. § 3B1.1, stating the co-defendants were his "customers" and not under his direction or control. He also argued for a safety valve reduction under U.S.S.G. § 5C1.2, for a final Guidelines range of 135 to 168 months' imprisonment. At the sentencing hearing, government counsel explained that, contrary to the presentence report, it believed the calculation of Mr. Reyes-Gonzales's Guidelines range should involve a lower base offense level of 36,

which, when adjusted upward only two levels for his role as an organizer and/or leader under § 3B1.1(c), upward two levels under § 2S1.1(b)(2)(B), and downward three levels for his acceptance of responsibility, resulted in a total offense level of 37 and a Guidelines range of 210 to 262 months' imprisonment. Counsel explained it believed only a two-level, rather than a four-level, increase was warranted under U.S.S.G. § 3B1.1(c) for Mr. Reyes-Gonzales's role as a leader and/or organizer because his conduct may not have involved five or more participants and was not extensive, as required for a four-level increase under § 3B1.1(a). In support of the enhancement, government counsel explained Mr. Reyes-Gonzales admitted to facts supporting an enhancement for his role as a leader and/or organizer in his plea agreement and that, during his colloquy at the hearing on this plea agreement, Mr. Reyes-Gonzales admitted those facts are true.

The government nevertheless presented the testimony of an agent involved in the investigation who testified Mr. Reyes-Gonzales's residence was at the center of the conspiracy to transport drugs and money between Mexico and Colorado, and five months of surveillance and wiretap interception revealed he gave orders, including to Mr. Tobar-Ortiz, on coordinating or facilitating the transportation of drugs and money; instructions to his girlfriend, Ms. Rivera-Torres, on how to distribute drugs and collect money when he was not at home; hired at least one driver he paid to transport the drugs and money; and obtained the vehicles used in the conspiracy. In describing the conspiracy, the detective

-6-

explained, "Everything happened at Mr. [Reyes]-Gonzales's residence in Bennett, Colorado."

The government also continued to move for a § 5K1.1 downward departure for Mr. Reyes-Gonzales's substantial assistance, stating it was seeking a thirty percent reduction of the Guidelines range under § 5K1.1 for substantial assistance. As a result, it explained the Guidelines range of 210 to 262 months' should be reduced to 147 to 183 months' imprisonment and requested sentences imposed at the low end of that range.

In sentencing Mr. Reyes-Gonzales, the district court determined the conspiracy was substantial, involving a number of participants importing substantial quantities of cocaine from Mexico and selling it to customers in Colorado and elsewhere to the detriment of the community.[1] It then found, based on a preponderance of the evidence, Mr. Reyes-Gonzales was an organizer or leader of the criminal activity, as supported by the plea agreement itself, including the fact he used his garage as the focal point for the receipt and distribution of cocaine, and, together with Mr. Tobar-Ortiz, recruited drivers to make the trips back and forth to Mexico. Besides Mr. Reyes-Gonzales's

---

[1] In ruling on the government's § 5K1.1 motion and rendering its sentence, the district court stated it considered all the pertinent documents, including the presentence report and addendum; Mr. Reyes-Gonzales's objection thereto; the government's motion for a downward departure under U.S.S.G. § 5K1.1; the plea agreement; Mr. Reyes-Gonzales's statements to the court; the witnesses' testimony, including Mr. Reyes-Gonzales's son's testimony; counsels' arguments; and the probation officer's recommendation.

stipulations in the plea agreement, it also pointed to other evidence corroborating Mr. Reyes-Gonzales's role as an organizer or leader, including witness testimony, stating:

> We have fairly extensive testimony from Detective Browning, including that, according to his investigation, which included video surveillance and wiretap intercepts, among others, ... that everything happened at [Mr. Reyes-Gonzales's] residence. ... [He] gave orders and instructions to Gilbert [Tobar-]Ortiz regarding facilitation of the importation of drugs from Mexico and the destination of the return dollars.

The district court also credited the detective's testimony that, based on his investigation into the conspiracy, Mr. Reyes-Gonzales coordinated the vehicles, paid drivers, and gave instructions to his girlfriend, Ms. Rivera-Torres. It noted that while some conflicting evidence existed concerning Mr. Reyes-Gonzales's qualification as a leader or organizer, such as his and others' statements, it had "no difficulty" finding, based on the "direct" and "circumstantial" evidence submitted, that he qualified for the aggravating role enhancement.

While the district court noted its belief Mr. Reyes-Gonzales probably led or organized five or more participants, it nevertheless stated it was "going to give [him] the benefit of lenity and the benefit of the doubt" and impose only a two-level increase for his role as a leader or organizer. Because Mr. Reyes-Gonzales qualified as an organizer or leader, it also noted he was not eligible for the safety valve reduction under U.S.S.G. § 5C1.2(a)(4). The district court then determined, after a reduction for acceptance of responsibility, the offense level was 37,

resulting in a Guidelines range of 210 to 262 months' imprisonment.

It then stated it had considered the nature and circumstances of the offense, including the fact he was a leader or organizer, dealt in very large amounts of cocaine, and was extensively involved in a serious crime; and also considered his history and characteristics, including his insignificant criminal history, the fact he acquired permanent residence in the United States, raised a very nice and articulate son, suffered the death of his wife, and had been gainfully employed as a truck driver. It also noted that while he generally had shown respect for the law, a need for punishment and deterrence existed, as well as safety, given "[d]istribution of narcotics within our community is dangerous and a community safety problem." After this, and considering the government's § 5K1.1 motion for a thirty percent reduction in his sentence, the district court sentenced Mr. Reyes-Gonzales, albeit "a little bit reluctantly," to the low end of the Guidelines range to concurrent 147-month sentences.

## II. Discussion

On appeal, Mr. Reyes-Gonzales argues the district court erred in applying the two-level enhancement under U.S.S.G. § 3B1.1(c) for his alleged leadership or organizational role in the offense, arguing "there was no valid finding that Mr. Reyes-Gonzales supervised a subordinate participant in the conspiracy." Specifically, he contends no evidence established he supervised Mr. Tobar-Ortiz or his girlfriend, Ms. Rivera-Torres, or that he organized or led Mr. Agayo-

Montes (a driver), Mr. Antonio Ortiz (a driver), or Ms. Esperanza Ortiz (found with Antonio Ortiz in the transportation of cocaine). With regard to the safety valve reduction, Mr. Reyes-Gonzales provides little or no argument in support thereof, other than to mention in his statement of the issues that the district court "deemed [him] ineligible for 'safety valve' relief" after committing reversible error in finding him an organizer or leader. The government contends Mr. Reyes-Gonzales waived his right to appeal his sentence, as contained in his plea agreement, and that his role as an organizer or leader is supported by the evidence in the record.

In cases involving written plea agreements, we have adopted a three-prong analysis for determining whether an appellate waiver is enforceable, in which we examine whether: 1) the disputed appeal falls within the scope of the waiver of appellate rights; 2) the defendant knowingly and voluntarily waived his appellate rights; and 3) enforcing the waiver would result in a miscarriage of justice. *See United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1214 (10th Cir. 2008) (relying on *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc)). Under the third prong, a miscarriage of justice occurs in situations where: 1) the district court relied on impermissible factors, such as race; 2) ineffective assistance of counsel resulted in connection with the negotiation of the waiver; 3) the sentence exceeds the statutory maximum; or 4) the waiver is otherwise unlawful. *See Hahn,* 359 F.3d at 1327. This list is exclusive, and an appellate waiver will not

result in a miscarriage of justice unless one of these four situations occurs. *See United States v. Shockey*, 538 F.3d 1355, 1357 (10th Cir. 2008). As to the fourth situation concerning a waiver being "otherwise unlawful," we do not look to "whether another aspect of the proceeding may have involved legal error," but look only "to whether the *waiver* is otherwise unlawful." *Id.* (internal quotation marks omitted).

Here, the record shows Mr. Reyes-Gonzales entered his plea agreement knowingly and voluntarily and waived his right to appeal any matter in connection with his sentence unless: 1) his sentence was above the maximum statutory penalty; 2) the district court, after determining the otherwise applicable Guidelines range, either departed or varied upwardly; or 3) it determined the offense level was greater than 37 and imposed a sentence based on that determination. None of these circumstances exist, nor has Mr. Reyes-Gonzales shown enforcement of the waiver would result in a miscarriage of justice or that his appeal otherwise falls into one of the recognized waiver exceptions. For this reason alone, Mr. Reyes-Gonzales's appeal fails.

Even if we considered Mr. Reyes-Gonzales's appeal on the merits, it would still fail.[2] Guidelines § 3B1.1(c) recommends a two-level increase in a

_____

[2] We review sentences for reasonableness, including a procedural component, encompassing the method by which a sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence. *United States v. Smart*, 518 F.3d 800, 802 (10th Cir. 2008). In determining

(continued...)

defendant's offense level if he "was an organizer, leader, manager, or supervisor" in the criminal activity. In determining if a defendant qualifies as an organizer or leader, the Guidelines recommend the sentencing court consider:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.

U.S.S.G. § 3B1.1 cmt. n.4. In addition to the criteria in the commentary to § 3B1.1, we have held functioning as a "leader" requires control over underlings, particularly in the form of recruitment and direction, while no control is necessary to qualify as an "organizer." *United States v. Wardell*, 591 F.3d 1279, 1304 (10th Cir. 2009). To qualify as an "organizer," one need only devise "a criminal scheme, providing the wherewithal to accomplish the criminal objective, and

---

[2](...continued)

whether the district court correctly calculated the recommended Guidelines range through application of the Guidelines, we review de novo the district court's legal conclusions and any factual findings for clear error, giving due deference to the district court's application of the Guidelines to the facts. *See United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006). "We review for clear error the district court's finding that the defendant acted as a leader or organizer for the purposes of § 3B1.1." *United States v. James*, 592 F.3d 1109, 1113 (10th Cir. 2010) (internal quotation marks omitted). "Under this standard, we will not reverse the district court's finding unless, on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted). If a sentence is properly calculated and is within the Guidelines range, it is entitled to a rebuttable presumption of reasonableness. *See Kristl*, 437 F.3d at 1054.

coordinating and overseeing the implementation of the conspiracy even though the defendant may not have any hierarchical control over the other participants." *Id.*

Here, the district court considered the criteria in Guidelines § 3B1.1 to conclude Mr. Reyes-Gonzales qualified as a leader or organizer. In so doing, it found the plea agreement itself established he used his garage as the focal point for the receipt and distribution of cocaine and, together with Mr. Tobar-Ortiz, coordinated at least two shipments of cocaine and recruited drivers to make the trips back and forth to Mexico. It also relied on the testimony of the detective who conducted an investigation into the conspiracy and testified, based on surveillance and wiretapping, that everything happened at Mr. Reyes-Gonzales's residence and that he coordinated the vehicles, paid drivers, and gave instructions to his girlfriend on selling cocaine from his residence in his absence. While, as Mr. Reyes-Gonzales argues, other evidence was offered disputing whether he organized or led those in the conspiracy, it is evident the district court did not credit such evidence and, instead, credited the government's direct and circumstantial evidence that he acted as a leader or organizer.

Given the comprehensive reasoning provided by the district court, we need not repeat its discussion on the evidence in support of the enhancement applied, other than to agree Mr. Reyes-Gonzales acted as a leader of at least one or more participants in the conspiracy when he recruited and paid at least one driver, gave

-13-

instructions to that driver, coordinated the shipments of cocaine involving drivers and their vehicles, and directed his girlfriend on the sale of narcotics when he was not at home. It is also evident he operated or managed the conspiracy by not only providing the wherewithal to accomplish the criminal objective through the use of his garage and obtaining vehicles but also coordinating and overseeing the implementation of the conspiracy when he coordinated the vehicles and their loads coming in and out of his garage. *Cf. United States v. Lora-Solano*, 330 F.3d 1288, 1295 (10th Cir. 2003) (upholding managerial enhancement where defendant's home was center of criminal activity). For these reasons, the district court did not err in its findings nor are we left with the definite and firm conviction a mistake has been committed. Nor did the district court err in concluding Mr. Reyes-Gonzales's role as an organizer or leader in the conspiracy disqualified him for a safety valve reduction. *See* U.S.S.G. § 5C1.2(a)(4).

Because Mr. Reyes-Gonzales's concurrent sentences are correctly calculated, they are procedurally reasonable. Because his sentence is within the applicable Guidelines range, we apply a presumption of substantive reasonableness which Mr. Reyes-Gonzales has failed to rebut in light of the sentencing factors in 18 U.S.C. § 3553(a).

III.  Conclusion

For these reasons, we **AFFIRM** Mr. Reyes-Gonzales's concurrent 147-month sentences.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge