**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 26, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DONALD JAY GOSS; LINDA SUE
GOSS,

    Plaintiffs - Appellants,

v.

BOARD OF COUNTY
COMMISSIONERS OF CREEK
COUNTY, State of Oklahoma; CREEK
COUNTY SHERIFF JOHN DAVIS, in his
official capacity,

    Defendants - Appellees.

Nos. 14-5128, 15-5004
(D.C. No. 4:13-CV-00374-CVE-TLW)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.
_____

Donald and Linda Goss[1] appeal the district court's grant of summary judgment

against their 42 U.S.C. § 1983 claims arising from what they assert was an illegal

search warrant resulting in their wrongful arrest and illegal confinement. They also

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] For ease of understanding, this order refers to the Gosses by their first names throughout.

appeal the district court's awarding costs to the defendants. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court.

## I. Background

On March 31, 2012, Jesse Thompson, an informant in Tulsa County, Oklahoma, told Deputy Jesse Brewer, an investigator with the Tulsa County Metro Drug Task Force, that he had smoked marijuana the day before with a man named Larry[2] at a mobile home in Mannford, Oklahoma. Thompson told Deputy Brewer that Larry had a large amount of marijuana on a coffee table in the mobile home. Thompson said that he had bought marijuana from Larry about 40 times at a particular mobile home in the trailer park. Thompson rode along with Deputy Brewer and showed him the mobile home where he had bought the marijuana. The mobile home's street address was 283 Navajo Place. Because the mobile home was in Creek County, and thus outside Deputy Brewer's jurisdiction, Deputy Brewer called Lieutenant Les Ruhman of the Creek County Sheriff's Office, eventually speaking to Deputy Scott Forrester. While on the telephone with and being directed by Deputy Brewer, Deputy Forrester drove past the mobile home to confirm its location and description.

Unfortunately, the affidavit Deputy Forrester submitted to obtain a search warrant misstated the mobile home's address as 238 Navajo Place (instead of 283

---

[2] Deputy Brewer initially gave Deputy Scott Forrester only Larry's first name. Later, at the request of the judge who issued the search warrant, Deputy Forrester called Deputy Brewer for more information from the informant about Larry. Deputy Brewer then relayed that Larry's last name was Tatro.

Navajo Place), but the affidavit also contained accurate information about the mobile home's true location:

> The residence is a singlewide mobile home, comprised of light color siding. The front door of the residence face [sic] east, to access the first door you go through a covered screened in porch.

> Directions to the residence are from the intersection of Basin Road and Keystone loop go West to the "Y" intersection one mile. Turn South on Keystone loop to Creek Lane, continue South to Navajo Place, turn West. The residence is located as the fourth residence on the South side of the road. The residence number is marked on a box on the front of the residence.

R. vol. 2 at 381. The affidavit declares that most of its contents came from Deputy Brewer's interview with informant Thompson.

On March 31, 2012, a state judge issued a search warrant for 283 Navajo Place. In the search warrant itself, Deputy Forrester provided the correct address as 283 Navajo Place (rather than 238). In addition, he included within the search warrant an identical description of the mobile home and its location. The search warrant authorized the search for and seizure of the following items:

> marijuana, fruits, instrumentalities, monies, records indicating the sales of illegal drugs and proof of residency . . . located at, and . . . now being kept, possessed, and concealed by the above named defendant [Tatro], or by other persons in whose possession he has placed it for the purpose of concealment, at or upon or within a certain vehicle and/or house, building or premises, the curtilage thereof and the appurtenances thereunto belonging . . . .

*Id.* at 383.

At about 9:00 p.m. that night, when officers arrived at the mobile home at 283 Navajo Place, Linda answered the door, and the officers served her with the search

warrant. The caption on the search warrant read, "The State of Oklahoma, Plaintiff, vs. Larry Tatro[,] Defendant" ("Tatro" was hand-printed after striking "Unknown Last Name"). *Id.* Linda told the deputies that she did not know anyone named Larry Tatro. Donald, who had been on a fishing trip, arrived home during the execution of the search warrant and parked his truck (which had his boat attached) a couple of homes down the street from 283 Navajo Place.

Deputies found no one named Larry Tatro in the mobile home. Although the deputies deployed a drug dog, the dog did not alert to the presence of illegal substances. Even so, in executing the search, the law-enforcement officers found behind a living-room sofa a gallon plastic bag containing white residue and a powdery substance. Because Deputy Forrester thought the bag's contents smelled like methamphetamine, he field tested a sample from the bag. According to Deputy Forrester, the powdery substance tested positive for methamphetamine. In addition to searching the mobile home, the officers also searched a travel trailer that was parked "three, four feet" away from the screened-in porch of the mobile home. *Id.* at 354. They also searched the truck, boat, and boat trailer. They seized several items, including firearms found in the home and boat. After the positive field test, the deputies arrested the Gosses for possessing methamphetamine, maintaining a place where illegal drugs were kept, and possessing a firearm during the commission of a felony.

From April 1, 2012, until late on April 3, 2012, the Gosses were detained in the Creek County Criminal Justice Center (the jail). The Gosses each raise claims

4

relating to the conditions of their confinement. Linda bases her claims on the jail's providing her ill-fitting clothing—a 6XL size, the largest the jail said it had—whose top "[b]arely" fit and whose pants failed to cover her backside. R. vol. 1 at 198. During her confinement, she was housed in a pod that had one shower and one toilet. Although the jail staff did not restrict her use of the toilet, her use was somewhat constrained by the need to share the limited facility with the other inhabitants in her pod. Because Linda has diabetes, she is sometimes unable to regulate her urination. While waiting in line to use the bathroom, she urinated on herself several times. Linda wore the same set of clothing throughout her three-day stay at the jail, and she never asked for a new set.

Donald bases his claims on being deprived of his prescribed medications to treat a number of medical ailments, including post-traumatic stress disorder (PTSD), pain, nerve damage, and depression. During his confinement, Donald repeatedly requested his medications, but the jail staff never provided them to him. Also during his jailing, another detainee assaulted Donald while he was in the shower. Donald never requested any medical attention for any injuries caused by the assault.

On June 4, 2012, the Oklahoma State Bureau of Investigation (OSBI) ran a more precise drug test, which established that the bag's contents did not contain methamphetamine. Because OSBI had set its testing at the most sensitive testing threshold level, it declined to retest the sample. Soon afterward, local authorities dropped the charges against the Gosses. Ultimately, law enforcement returned some personal property to the Gosses—their truck, boat, and trailer. But the Gosses claim

5

that law enforcement never returned certain personal property seized from inside the truck and boat, and that law enforcement had drilled holes in the boat, rendering it unusable.

In the Gosses' Second Amended Complaint, they asserted four claims under 42 U.S.C. § 1983 against Sheriff John Davis in his official capacity and the Board of County Commissioners: (1) failure to train and supervise two named deputies, (2) unlawful search and seizure, (3) unlawful and degrading detention, and (4) malicious prosecution. In addition, they asserted seven state-law claims: (5) trespass, (6) assault, (7) assault and battery, (8) false arrest and imprisonment, (9) conversion or taking of personal property without compensation or due process, (10) property damage, and (11) negligent and intentional infliction of emotional distress. The district court granted summary judgment to the defendants on all federal claims and declined to exercise supplemental jurisdiction over the remaining state claims. In a separate order, the district court awarded costs to the defendants. The Gosses appeal the grant of summary judgment against their federal claims and the unfavorable costs award.

## II.  Discussion

### A.  Standard of Review for Federal Claims

We review de novo the grant of summary judgment. *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1195 (10th Cir. 2008). We view the evidence and all reasonable inferences from it in the light most favorable to the nonmoving party. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 533 (10th Cir. 2014). Summary

6

judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A § 1983 claim has two essential elements: (1) violation of a right "secured by the Constitution and laws of the United States" by (2) "a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A suit against persons in their official capacities functions as a suit against the municipal entity itself. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). For municipal actors to be acting under color of state law, they must have committed a constitutional violation while acting under an official policy or custom. *Id.* at 694. Thus, a municipal entity may be held liable only for an act it officially sanctioned or for the actions of an official with final policymaking authority. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 122–23 (1988). An official policy can be shown through an official decision or statement or through "the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* at 127 (quotation marks omitted).

## B.  Warrant and Search

The Gosses argue that the search warrant was defective because (1) Larry Tatro was not found in their home, (2) Deputy Forrester spoke to Deputy Brewer instead of speaking directly to informant Thompson, and (3) Deputy Forrester did not verify which of the two addresses was correct—283 Navajo Place as correctly stated

in the search warrant or 238 Navajo Place as incorrectly stated in the search-warrant affidavit. They also assert that the district court incorrectly drew factual inferences in the defendants' favor. But what the Gosses classify as factual inferences that should have been drawn in their favor are in reality speculative assumptions that the district court was not required to credit.

Addressing the first argument, we conclude that Larry Tatro's absence during the search did not affect the legality of the search warrant. The search warrant permitted the officers to search for "marijuana, fruits, instrumentalities, monies, records indicating the sales of illegal drugs and proof of residency . . . located at, and . . . now being kept, possessed, and concealed by the above named defendant [Tatro], *or by other persons in whose possession he has placed it* for the purpose of concealment . . . ." R. vol. 2 at 383 (emphasis added).

Addressing the second argument, we conclude that Deputy Forrester was not obliged to speak to informant Thompson. Instead, he could permissibly rely on and report in his search-warrant affidavit Deputy Brewer's account of what Deputy Brewer had learned from Thompson. Deputy Brewer had developed probable cause to search the Gosses' residence. But because the mobile home was outside of his jurisdiction, he communicated the information to Deputy Forrester, who acted. We permit information to be imputed between police officers in the context of warrantless searches. *See, e.g.*, *United States v. Chavez*, 534 F.3d 1338, 1347–48 (10th Cir. 2008) (permitting a warrantless search under the automobile exception based on vertical collective knowledge); *see also United States v. Lyons*, 687 F.3d

8

754, 766 (6th Cir. 2012) (recognizing "the practical reality that effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another" (quotation marks omitted)). Search-warrant affidavits often set forth information beyond that personally known by the affiant. Here, the affidavit set forth all bases of probable cause and the source of each basis.

The Gosses argue that the department violated their constitutional rights by not having a policy in place to verify tips like informant Thompson's. But certainly in instances in which the Sheriff's deputies obtain warrants, the warrant serves as a sufficient safeguard against unconstitutional actions taken based on informants' tips.

Addressing the third argument, we conclude that the affidavit's incorrect reference to 238 Navajo Place—rather than the search warrant's correct reference to 283 Navajo Place—does not render the search warrant invalid. "A technically wrong address does not invalidate a warrant if it otherwise describes the premises with sufficient particularity so that the police can ascertain and identify the place to be searched." *United States v. Lora-Solano*, 330 F.3d 1288, 1293 (10th Cir. 2003). The identical descriptions of how to get to the mobile home and the description of the mobile home itself provided in the search warrant and the affidavit meet this standard.

The district court correctly found, and defendants do not argue otherwise, that the seizure of the truck, boat, and their contents violated the Fourth Amendment.[3] But to establish a § 1983 violation on their official-capacity claims, the Gosses must also show that some government policy or custom inflicted the injury such that the government as an entity is responsible. *Monell*, 436 U.S. at 694. In an attempt to do so, the Gosses assert that "[b]ecause the District Court incorrectly weighed the evidence, the District Court never decided whether the seizure was due to poor training or to the lack of a policy, practice, or custom of the [department] which would have protected the Gosses." Appellant's Opening Br. at 30. Even if that were true, we see no evidence in the record supporting a claim that the defendants acted under a policy, practice, or custom that led to the seizure. Thus, this claim must fail.

## C.      Prosecution and Handling of Evidence

In the district court, the Gosses raised a constitutional-violation claim under *Brady v. Maryland*, 373 U.S. 83 (1963), based on the defendants' alleged failure to produce exculpatory evidence. Because *Brady* protects a criminal defendant's right to a fair trial, and the Gosses never went to trial, the Gosses cannot proceed with a *Brady* claim here. *Becker v. Kroll*, 494 F.3d 904, 924 (10th Cir. 2007). The Gosses acknowledge that this is "not actionable as a technical *Brady* violation." Appellant's Opening Br. at 36.

---

[3] The Gosses have not appealed the district court's ruling on the search of their travel trailer.

10

The Gosses also raise a malicious-prosecution claim based on their allegation that Deputy Forrester falsified the field-test results to test positive for methamphetamine. Malicious prosecution is a cognizable claim under § 1983 because it implicates the Gosses' Fourth Amendment right to be free from unreasonable seizures. *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996).

> Under our cases, a § 1983 malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) (citing *Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007)).

In their motion for summary judgment, the Gosses argued four grounds in support of their malicious-prosecution claim: (1) Deputy Forrester did not disclose to the judge issuing the search warrant that the numbers given for the mobile home's street address differed (having transposed two numbers) in the search warrant and its accompanying affidavit; (2) the search warrant did not mention the Gosses; (3) the department did not disclose exculpatory OSBI test results; and (4) Deputy Forrester did not disclose law enforcement's attempt to obtain retesting of the suspected methamphetamine. On appeal, the Gosses argue that a genuine issue of material fact exists for their malicious-prosecution claim, namely, that the different results in the field test and the OSBI laboratory test provide a sufficient inference that Deputy Forrester falsified the test or planted the bag. Because the Gosses failed to argue this

11

in the district court, they cannot now raise it on appeal. *See McKenzie v. U.S. Citizenship & Immigration Servs.*, 761 F.3d 1149, 1154 (10th Cir. 2014) ("Ordinarily we do not entertain arguments that are not raised before the district court . . . ." (citing *Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc.*, 413 F.3d 1163, 1167 (10th Cir. 2005))).

Even if the Gosses had preserved the claim, it would still fail. The Gosses claim that the district court "weighed the evidence in favor of the Defendants and has rejected the evidence and reasonable inferences" that Deputy Forrester falsified the field test or planted the bag. Appellant's Opening Br. at 37. That claim would fail on the fourth element, malice. The inferences the Gosses ask us to draw to find malice are not reasonable. According to the Gosses, the contradictory drug-test results show that Deputy Forrester acted with malice. We disagree for two reasons. First, it would make little sense for law-enforcement officers to plant a bag not containing illegal drugs. Second, because field tests need to be verified by more formal and accurate laboratory tests, it is hardly a reasonable inference that anytime the field test shows a false positive result, an officer must have planted the substance later tested.

### D.     Linda's Conditions of Confinement

The Gosses next challenge Linda's conditions of confinement because the jail provided her jail clothing that was too small and never provided her a second set of clothing after her medical condition caused her to urinate on herself several times during her three-day confinement. The rights of pretrial detainees are protected by the Fourteenth Amendment; for a § 1983 claim, the protections given to pretrial

12

detainees are the same as those given to prisoners under the Eighth Amendment. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002). To show a constitutional violation, the Gosses must show (1) that the deprivation is objectively "sufficiently serious" in that it deprives the inmate of "the minimal civilized measure of life's necessities," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); and (2) that the prison official acted with "deliberate indifference," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference requires that the official know of and disregard a substantial risk of serious harm. *Farmer*, 511 U.S. at 837. In other words, the official must know of facts that would allow the inference and must actually infer that there is that risk. *Id.* For a condition in a jail to violate the Eighth Amendment, the condition must result in "unquestioned and serious deprivation of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.

We do not need to determine whether the conditions were sufficiently serious to trigger liability, because the Gosses fail to show deliberate indifference. We see nothing in the record suggesting that Linda ever told jail officials that she had urinated on herself. Further, we note that Linda testified in her deposition that the jail staff did not restrict her use of the toilet. Nor has Linda offered any evidence that jail officials even knew of her medical issues. The Gosses claim that Linda did not ask for a new uniform, because she had been told that there was only one available in her size so reporting the problem would not have solved anything. While that may be true, it is irrelevant. Although Linda might have been able to show a sufficiently

13

serious violation if she had told the prison officials of her problem and not received a clean uniform, she does not even allege that she told them.

The Gosses claim that Linda's uniform "was too small to modestly cover her body." Appellant's Opening Br. at 30. Ill-fitting clothing alone is not sufficiently serious to rise to the level of a constitutional violation. For example, in *Young v. Berks County Prison*, 940 F. Supp. 121 (E.D. Pa. 1996), Young was incarcerated twice, the first time for about two-and-a-half months and the second time for about two years. *Young*, 940 F. Supp. at 122. Young required size 4XL clothing. *Id.* While the prison's policy was to issue two sets of clothing to each inmate, it did not have two sets in his size. *Id.* For most of his incarceration, Young had only one set of 4XL pants, and when he had a second pair they were a size too small. *Id.* The one pair of 4XL pants became dirty and ragged over the course of his incarceration, leading to its "eventually tear[ing] in such a way as to cause him some embarrassment." *Id.* at 122–23. Due to his laundry difficulties, Young often had to eat alone in his cell and occasionally had to miss therapeutic and rehabilitative activities. *Id.* at 123. Additionally, Young was the subject of ridicule by other inmates because of these difficulties. *Id.* Even under those circumstances—unquestionably worse than Linda's experience with too-small clothing—the district court found no violation. Instead, the court noted that "Young's injury [from clothing that was too small] was an indignity incidental to prison life that does not rise to the level of a constitutional violation." *Id.* at 124.

14

Although we certainly sympathize, and wonder how the jail could not do better, we simply cannot conclude that Linda's clothing issues present a constitutional violation. The district court properly granted summary judgment on the claims relating to Linda's conditions of confinement.

## E.    Donald's Conditions of Confinement

The Gosses also challenge Donald's conditions of confinement, alleging that jail officials deprived him of medical care and failed to protect him from other inmates. "Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act deliberately and indifferently to serious medical needs of prisoners in their custody." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). "Deliberate indifference has both an objective and subjective component." *Id.* To meet the objective component, "[t]he medical need must be sufficiently serious." *Id.* A medical need is sufficiently serious "if the condition 'has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Al-Turki v. Robinson*, 762 F.3d 1188, 1192–93 (10th Cir. 2014) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)). "Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citing *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)). To satisfy the subjective component, the plaintiff must show that the defendant knew that the plaintiff "faced a substantial risk

15

of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'" *Hunt*, 199 F.3d at 1224 (quoting *Farmer*, 511 U.S. at 847). The substantial-harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

Although the district court concluded that the claim failed for lack of substantial harm, we cannot agree on that point. Donald claims that he asked for his medications and he never received them. He needed his medications to treat PTSD, pain, nerve damage, and depression. Donald testified that he regularly took all but one of his prescribed medications, and that he took that one as needed. Donald concedes that his doctor told him that he had suffered no permanent damage, but he also recalls that his doctor later told him that he "had to go through more pain than [he] should have" by not taking his medications. R. vol. 4 at 888. Donald's conditions were "diagnosed by a physician as mandating treatment," which was then withheld. *Al-Turki*, 762 F.3d at 1192 (quotation marks omitted). That is enough to raise an issue of material fact at the summary-judgment stage.

But Donald's claim fails because he produced no evidence of an official custom or policy that led to the denial of medical care. The Gosses have not shown that the sheriff in his official capacity is responsible for any violation, because they have failed to provide evidence that the sheriff, as an official with final policymaking authority, promulgated an official policy that harmed Donald. *City of St. Louis*, 485 U.S. at 122–23. Nor have the Gosses shown that the sheriff allowed "the existence of a widespread practice that, although not authorized by written law or express

16

municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* at 127 (quotation marks omitted). Thus, summary judgment on this claim was proper.

We must also affirm the district court's dismissal of Donald's inmate-safety claim. We acknowledge that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (alteration in original) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1998)). To show a violation, a plaintiff must show both an objective and subjective element: that the plaintiff "is incarcerated under conditions posing a substantial risk of serious harm" and that the jail official was deliberately indifferent to the plaintiff's safety. *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) (quoting *Farmer*, 511 U.S. at 834). To be deliberately indifferent, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Here, we see no evidence that Donald faced an objectively serious risk of harm during his detention, for example, any direct threats from other inmates or a pattern of harmful altercations between inmates. Nor do we see any evidence of subjective knowledge of a potential attack against Donald that might support a claim against prison officials for deliberate indifference to his safety.

## F. Costs

The Gosses also challenge the imposition of costs against them. Under Fed. R. Civ. P. 54(d)(1), a court should ordinarily award costs to the prevailing party.

*Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1190 (10th Cir. 2004) (citing *Cantrell v. Int'l Bhd. of Elec. Workers*, 69 F.3d 456, 458–59 (10th Cir. 1995)). We review the award of costs for an abuse of discretion. *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1148 (10th Cir. 2009).

On appeal, a party may not challenge an award of costs unless the party sought review in the district court of the clerk of court's award of costs. *See Bloomer v. United Parcel Serv., Inc.*, 337 F.3d 1220, 1220–21 (10th Cir. 2003) (per curiam). Here, in the district court, the Gosses' argument in full reads as follows: "COME NOW the Plaintiffs, pursuant to F.R.C.P. 54(d)(1), LCvR54.1 and the District Court's Guidelines for Taxation of Costs, and hereby objects to the Court Clerk's ruling on costs and moves the District Court to review the same." R. vol. 7 at 1460. Looking solely at what the Gosses filed with the district court in seeking review of the clerk's costs award, the district court declared that because "Plaintiffs' one-sentence motion contains no argument to support overturning the Court Clerk's order," the Gosses had "failed to overcome the presumption in favor of awarding costs to the prevailing party." *Id.* at 1465.

The Gosses argue that the district court overlooked their argument made in response to the defendants' bill of costs. The Gosses filed that response while the costs issue was still before the Clerk of Court. The response raised two broad issues: first, that costs would cause a great economic hardship on them, and, second, that some of the imposed costs should not be awarded. Raising the issue before the Clerk of Court does not qualify as raising it before the district court. To find that approach

18

sufficient would run contrary to the logic of *Bloomer*, which required that the district court review the clerk's award before allowing appellate review. *Bloomer*, 337 F.3d at 1220–21. To now hold that presenting an argument to the clerk—but not to the district court itself—is sufficient to preserve an issue on appeal would be inapposite. Because the Gosses did not present any arguments on costs to the district court, the arguments they make here are waived.

**G.     Board as a Necessary Party**

The Gosses sued both the sheriff in his official capacity and the Board of County Commissioners of Creek County. Under Oklahoma state law, a party sues a county by suing the board of county commissioners. Okla. Stat. tit. 19, § 4 (2015); *Green Constr. Co. v. Okla. City*, 50 P.2d 625, 627 (Okla. 1935). Here, the district court concluded that the Board was not a proper party to this case, because the Gosses did not identify any county policies, customs, or other bases on which to hold the Board responsible for the sheriff's or deputies' actions. On appeal, the Gosses assert that the Board is a necessary party because the suit against the sheriff in his official capacity is a suit against the municipal entity he represents, the sheriff's department, which operates under the Board's control. Because none of the Gosses' claims have survived summary judgment, we do not now rule on whether the district court correctly held that the Board of County Commissioners is not a proper party.

### III.     Conclusion

For the reasons stated above, we affirm the district court.

19

Entered for the Court


Gregory A. Phillips
Circuit Judge